IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN L. WARFORD, | ) | |
| | ) | |
| Claimant, | ) | No. 14-cv-3593 |
| | ) | |
| v. | ) | Jeffrey T. Gilbert |
| | ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Robin Warford ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6.] Claimant has moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. [ECF No. 13.] The Commissioner has done likewise. [ECF No. 22.] For the reasons stated below, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

On August 16, 2011, Claimant filed an application for DIB, alleging a disability onset date of March 18, 2011. (R. 160-166.) The claim was denied initially on November 15, 2011, and upon reconsideration on July 11, 2012. (R. 95, 96.) On August 3, 2012, Claimant requested

a hearing before an Administrative Law Judge (the "ALJ"). (R. 112-113.) The hearing was held on February 25, 2013. (R. 41-94.) At that hearing, Claimant, who was represented by counsel, appeared and testified. *Id.* A vocational expert (the "VE") and a medical expert (the "ME") also appeared and testified. *Id.*

On April 19, 2013, the ALJ issued a written decision. (R. 15-34.) In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Act. (R. 34.) At step one, the ALJ found Claimant had not engaged in substantial gainful activity ("SGA") since March 18, 2011, the alleged onset date. (R. 20.) At step two, the ALJ found Claimant had the severe impairments of status post fusion – cervical spine, status post-carpal tunnel release surgery – bilateral, vertigo, migraine headaches, depressive disorder, post-traumatic stress disorder, and history of alcohol abuse. *Id.* At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R. 21.)

Before step four, the ALJ found Claimant had the residual functional capacity ("RFC") to do light work. (R. 26-27.) The ALJ further limited Claimant's RFC because she could (1) never climb ladders, ropes, or scaffolds; (2) occasionally bend, stoop, crouch, crawl, kneel; (3) occasionally reach overhead bilaterally; (4) frequently reach in all other directions bilaterally; and (5) frequently handle or finger bilaterally. *Id.* The ALJ found (1) manipulative limitations on Claimant's ability to use her bilateral upper extremities at shoulder height or lower, and (2) environmental limitations on her ability to do commercial driving. *Id.* The ALJ determined that Claimant must avoid all use of vibrating tools and all exposure to hazards, such as unprotected heights and dangerous moving machinery. *Id.* The ALJ found Claimant could do no more than

2

simple work in a workplace environment that allowed for occasional work-related decision making, occasional changes to the work setting, occasional interaction with supervisors and co-workers, and no interaction with the public. *Id.* Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 32.) Finally, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 33.) Specifically, the ALJ found Claimant could work as a mail clerk, an assembler, or a hand packer. (R. 33-34.) Because of this determination, the ALJ found Claimant not disabled under the Act. (R. 34.)

On April 19, 2013, Claimant sought review of the ALJ's decision. *See* R. 1. On April 8, 2014, the Social Security Appeals Council denied this request. *Id.* Thus, the ALJ's decision became the final decision of the Commissioner. *Id. See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). A claimant then may seek review of this final decision in the district court. *Id.* Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

3

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the district court will not uphold the ALJ's findings if the ALJ did not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). Though the substantial evidence standard is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). The court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

Claimant asserts that the ALJ made two errors. Claimant first argues the ALJ did not follow the treating physician rule. Next, Claimant contends the ALJ improperly evaluated her credibility. The Court finds the ALJ committed the first error. Because this conclusion requires reversal and remand, the other alleged error need not be addressed.

**A.      The ALJ Improperly Weighed The Opinion Of Dr. D'Agostino.**

On November 14, 2012, Claimant's treating psychiatrist, Dr. Anthony M. D'Agostino, completed a Psychiatric/Psychological Impairment Questionnaire (PPIQ"). (R. 648-655.) Dr. D'Agostino indicated that he first treated Claimant on March 14, 2012, and then continued to provide monthly treatments through June 11, 2012. (R. 648.) In the PPIQ, Dr. D'Agostino

4

diagnosed Claimant with recurrent major depression. *Id.* The doctor also indicated not only that Claimant's current GAF score was just 50, but that it had been as low as 28 in the past year. *Id.* Dr. D'Agostino opined that Claimant's prognosis was guarded. *Id.* According to Dr. D'Agostino, Claimant had two months of intensive treatment that led to only limited results. (R. 649-650, 655.) Ultimately, Dr. D'Agostino opined that Claimant had a host of limitations, many of which were marked or moderate. (R. 651-653.) The doctor listed the clinical findings that supported his opinion: poor memory, appetite disturbance with weight change, sleep and mood disturbance, social withdrawal or isolation, emotional liability, decreased energy, recurrent panic attacks, anhedonia or pervasive loss of interests, intrusive recollections of a traumatic experience, generalized persistent anxiety, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, and pathological dependence on passivity. (R. 649.)

The ALJ gave Dr. D'Agostino's opinion "some" weight. (R. 32.) But Claimant argues that the ALJ should have given the opinion controlling weight. Under the treating physician rule, an ALJ must "give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The Commissioner defends the ALJ's decision by arguing that Dr. D'Agostino's opinion failed both prongs of the treating physician rule.

The Commissioner contends Dr. D'Agostino's opinion was "not supported by clinical findings." [ECF No. 23, at 6.] In the immediately subsequent sentence, though, the Commissioner concedes that Dr. D'Agostino examined Claimant on March 14, 2012. *Id.* Dr. D'Agostino's report from that psychiatric evaluation addressed Claimant's complaints, the history of her present illness, her past psychiatric history, her past medical history, her social

5

history, her family history, her initial treatment plan, and her objectives for discharge and aftercare plan. (R. 439-442.) Most importantly, the report clearly reflects that Dr. D'Agostino performed a mental status exam that addressed Claimant's appearance, behavior, orientation, speech, mood/affect, thought process, thought content, suicidal/assaultive/violent thought, insight/judgment, attention/concertation, memory, and intellectual capacity. (R. 440-441.) Based on this exam, the doctor noted his diagnostic impressions, including major depression, alcohol abuse, pain pill abuse, migraine headaches, and hypothyroidism. (R. 441.) Another note from the same day reveals that Dr. D'Agostino also performed a physical exam. (R. 437.) After this initial set of examinations, Dr. D'Agostino treated Claimant monthly for about three months. (R. 561.) As described above, in rendering his opinion, Dr. D'Agostino listed many "clinical findings" that supported his ultimate opinion. (R. 649.) And many of the findings listed in the Psychiatric/Psychological Impairment Questionnaire are consistent with those documented in Dr. D'Agostino's March 14th report. Therefore, contrary to the Commissioner's claim, there clearly was sufficient evidence in the record to show that Dr. D'Agostino's opinion was supported by clinical findings.

The Commissioner repeatedly emphasizes that Dr. D'Agostino's treatment notes were not submitted to the ALJ. The ALJ also noted the same. (R. 32.) That does not change the fact, though, that the record included significant clinical findings made by Dr. D'Agostino, which supported his opinion. The fact that every note was not included in the record does not make the documented clinical findings vanish. Moreover, if it were the case that the absence of the notes justified giving Dr. D'Agostino's opinion less than controlling weight, the ALJ may have had a duty to augment or more fully develop the record. It is black letter law in this circuit that "[a]n

ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004).

The second prong of the treating physician rule turns on whether the physician's opinion is inconsistent with the other substantial evidence. The Commissioner identifies just two categories of evidence that contradict Dr. D'Agostino's opinion. Primarily, the Commissioner relies upon the findings of Dr. Maria Luis P. Estrada. [ECF No. 23, at 5-7.] But the ALJ did not consider and weigh Dr. Estrada's findings. In fact, he did not even describe Dr. Estrada's findings. Therefore, *Chenery* prohibits the Commissioner from relying on Dr. Estrada's findings to show Dr. D'Agostino's opinion was inconsistent with the other substantial evidence. *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943).

The Commissioner also makes a one sentence, passing reference to Dr. Michael E. Stone, a consultative psychologist who examined Claimant at the SSA's request. [ECF No. 23, at 6.] The Commissioner asserts in a conclusory manner that Dr. Stone "did not observe the extreme functional deficits that Dr. D'Agostino included . . . ." *Id.* Such an undeveloped argument is insufficient to show that other substantial evidence contradicted Dr. D'Agostino's opinion. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ."). This contention also is flawed on the merits. Dr. Stone did not opine as to Claimant's ability to work, and the ALJ did not weigh any opinion from him. The ALJ also did not detail the findings from Dr. Stone's examination. Thus, the argument may also be precluded by *Chenery*.

It is worth noting that Dr. Stone's findings, standing alone, do not constitute substantial evidence contrary to Dr. D'Agostino's opinion. Indeed, many of Dr. Stone's findings are largely

7

consistent with Dr. D'Agostino's opinion. Dr. Stone found Claimant's behavior to be "tense, serious, and irritable throughout the examination." (R. 357.) He determined that her "intelligence is estimated to reside in the borderline range." *Id.* According to Dr. Stone, Claimant's "history, symptoms, and signs are indicative of depression, anxiety, panic attacks[,] a history of substance abuse, and medical problems." *Id.* The doctor concluded Claimant's prognosis was guarded. *Id.* Based on these findings, Dr. Stone diagnosed Claimant with depression secondary to medical problems, generalized anxiety, post-traumatic stress disorder because of her past sexual abuse, and alcohol abuse. *Id.* In light of these problems, Dr. Stone determined she was unable to manage benefits on her own behalf at that point in time. (R. 358.)

For these reasons, the Commissioner has not provided an adequate defense of the ALJ's decision to give Dr. D'Agostino's opinion less than controlling weight. To be clear, though, the Court is not finding that, on remand, Dr. D'Agostino's opinion must be given controlling weight. Instead, the ALJ must determine what weight each medical opinion should be given, in light of the entire record, and in accordance with the controlling legal principles discussed above.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF No. 13] is granted, and the Commissioner's motion for summary judgment [ECF No. 22] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: June 15, 2016